## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| SUSAN RYERSON F.K.A. SUSAN KIMBALL, | ) ) ) | |
| PLAINTIFF | ) | |
| vs. | ) ) | DOCKET NO. |
| MAINE STATE HOUSING AUTHORITY CAMDEN NATIONAL BANK | ) ) ) | |
| DEFENDANTS | ) | |

### COMPLAINT
### with JURY DEMAND

### INTRODUCTION

This is an action for actual, compensatory, statutory and punitive damages brought by the Plaintiff, Susan Ryerson (formerly Susan Kimball), an individual consumer, against Defendants, Maine State Housing Authority and Camden National Bank for violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §§524, and 105, contempt of Orders entered in her chapter 13 bankruptcy matter, In Re Susan E. Kimball, No. 09-10077, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 *et seq*., (hereinafter collectively known as the ''FDCPA'') and for Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts in Violation of the Maine Consumer Credit Code 9-A M.R.S.A. §§9-403(F)-(G) which all prohibit abusive, deceptive, and unfair debt collection practices.

### I.      JURISDICTION AND VENUE

1.      The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 28 U.S.C. §1367.

1

2.      Venue is proper as the Plaintiff is a resident of Kennebec County, all relevant events occurred in this District, and Defendants were doing business in Maine during all relevant times.

## II.      PARTIES

3.      Plaintiff Susan Ryerson is a natural person residing in Sidney, Maine

4.      Defendant Maine State Housing Authority ("MSHA") is a Maine State independent agency that facilitates public and private housing financing.

5.      Defendant Camden Nation Bank ("Camden") is a nationally chartered financial organization with a principal place of business of Camden, Maine.

6.      On or around December 2010, Camden took on the servicing of Mrs. Ryerson's loan on behalf of the owner of the loan, Maine State Housing Authority.

7.      Camden acquired servicing of Mrs. Ryerson's mortgage loan when the loan was in default.

8.      Camden engages in the business of collecting debts in this state.

9.      Camden regularly engages in the enforcement of security interests securing debts.

10.     Camden uses the mails and telephone to collect debts, and Camden regularly attempts to collect debts alleged to be due to another, particularly in its role as loan servicer.

11.     Camden is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6) and 32 M.R.S.A. §11002(6) and 11003(7)(C).

## III.      FACTS

12.     On or around March 4, 2004, Mrs. Ryerson entered into a Mortgage, which was assigned that day to Maine State Housing Authority, and a Note with Fleet National Bank ("loan") in the amount of $104,800 on her property at 125 Shepherd Rd., Sidney, Maine ("Property").

13.     Mrs. Ryerson filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court, District of Maine, Case No. 09-10077 on January 29, 2009.

14.     On March 16, 2009, Mrs. Ryerson filed an Amended Chapter 13 plan proposing to cure the arrears on her loan and maintain the loan as current through the term of her bankruptcy plan.  See Bankruptcy Case No. 09-10077 at Document No. 12.

15.     Graystone Mortgage was the servicer of Mrs. Ryerson's loan in 2009 and acted on behalf of MSHA in the bankruptcy matter.

16.     Mrs. Ryerson's Amended Plan called for Mrs. Ryerson to pay arrears owed on her loan to Graystone through the plan and to make current payments on the loan directly to Graystone. See Bankruptcy Case No. 09-10077 at Document No. 12.

17.     Graystone received notice entitled Hearing on Confirmation of Mrs. Ryerson's Amended Chapter 13 Plan - Response Required, along with a copy of the Amended Chapter 13 Plan on or around March 16, 2009.  See Bankruptcy Case No. 09-10077 at Document No. 13

18.     Neither Graystone nor MSHA responded to the Notice of the Hearing on Confirmation of Amended Chapter 13 Plan.

19.     The Court entered an Order Confirming Mrs. Ryerson's Plan on April 16, 2009. See Bankruptcy Case No. 09-10077 at Document No. 14.

20.     Graystone received actual notice of the Court's Order Confirming Mrs. Ryerson's Amended Chapter 13 Plan on or around April 16, 2009. See Bankruptcy Case No. 09-10077 at Document No. 15

21.     Neither Graystone nor MSHA objected to the Order Confirming Mrs. Ryerson's Amended Chapter 13 Plan.

22.    MSHA, through Graystone, filed a Proof of Claim on May 6, 2009 with an alleged arrears amount due of $1,751.13 and a current monthly payment of $667.  See Bankruptcy Case No. 09-10077, U.S. Bankruptcy Court, District of Maine (hereinafter Bankruptcy Case No. 09-10077) at Claim 4-1.

23.    On October 21, 2009, Mrs. Ryerson filed and delivered to MSHA c/o Graystone a Motion to Allow and Disallow Claims, Modification of Plan, Notice of Hearing on Debtor's Motion to Allow and Disallow Claims, Modification of Plan – Response Required and proposed form of Order Allowing and Disallowing Claims – Order Modifying Plan which MSHA c/o Graystone received notice of via first class certified mail, postage prepaid on or around October 21, 2009.  See Bankruptcy Case No. 09-10077 at Document No. 16.

24.    The Motion to Allow and Disallow Claims, Modification of Plan called for Mrs. Ryerson to pay MSHA directly each month for current payments on her loan and to pay arrears on the loan through the Trustee.  See Bankruptcy Case No. 09-10077 at Document No. 16.

25.    Neither MSHA nor Graystone filed a response to Debtor's Motion to Allow and Disallow Claims, Modification of Plan – Response Required and proposed form of Order Allowing and Disallowing Claims – Order Modifying Plan.

26.    The Order Allowing and Disallowing Claims – Order Modifying Plan entered November 26, 2009. See Bankruptcy Case No. 09-10077 at Document No. 20.

27.    Both Graystone and MSHA received notice of the Order Allowing and Disallowing Claims via the Court's ECF system on or around November 23, 2009. See Bankruptcy Case No. 09-10077 at Document No. 20.

28.    Upon information and belief, on or around December 2010, Camden took on the servicing of Mrs. Ryerson's loan.

4

29.     Mrs. Ryerson filed a change of address for MSHA to "c/o Camden National Bank, 245 Commercial Street, Rockport, ME 04856" on December 2, 2010. See Docket, 12/02/2010, Bankruptcy Case No. 09-10077.

30.     Neither Camden nor MSHA filed a Request for Notice.

31.     MSHA's former address was Maine State Housing c/o Graystone Solutions, 142 North Rd., Sudbury, MA 01776.  See Claim 4-1.

32.     On January 11, 2013, Mrs. Ryerson filed a Motion to Determine Status of her Mortgage as Current (Status Motion).  See Bankruptcy Case No. 09-10077 at Document No. 29.

33.     Notice of the Status Motion and hearing were delivered to Camden National Bank, 245 Commercial Street, Rockport, ME 04856 on January 11, 2013.  See Bankruptcy Case No. 09-10077 at Document No. 29.

34.     Camden received notice of the Mrs. Ryerson's Motion Determining Mortgage Current, including a notice regarding the deadline to file objections, on or around January 12, 2013. (Doc. 29).

35.     Neither Camden nor MSHA responded to the Motion Determining Mortgage Current.

36.     Mrs. Ryerson was current on her mortgage at the time she filed her Motion to Determine Status of Mortgage as Current on January 11, 2013 and at the time the Order Granting Motion Determining Mortgage Current entered on February 1, 2013.  See Exhibit 1, a true and accurate copy of a letter from MSHA's attorney dated October 21, 2014 stating "Camden, on behalf of Maine Housing, has reviewed Ms. Kimball (sic) payment history in detail and has determined that Ms. Kimball made consistent and on-time payments during the course of the Chapter 13 bankruptcy and is currently due for her November 1, 2014 payment."

37.     Camden was acting on behalf of MSHA in servicing Mrs. Ryerson's loan.  See Exhibit 1.

38.     The Court Ordered the Status Motion granted on February 1, 2013. <u>See</u> Bankruptcy Case No. 09-10077 at Document No. 36.

39.     The Court found that, as of February 1, 2013 the debtor had cured "all pre-petition mortgage defaults pursuant to the prior order of the court." The Court further found that "the debtor has no post-petition defaults, or has cured all post-petition default" and that there "are no unpaid amounts due for principal, interest, costs, charges, escrows, fee and/or other assessments of any kind, nature or amount." <u>Id.</u>

40.     Neither MSHA nor Camden filed any notice or motion regarding post-petition amounts alleged owed by Mrs. Ryerson during the pendency of the bankruptcy.

41.     Mrs. Ryerson made all payments ordered in her plan through the chapter 13 Trustee including payments owed to MSHA c/o Camden National Bank for pre-petition arrears by January 16, 2013.  <u>See</u> Bankruptcy Case No. 09-10077 at Documents No. 44 and 45; Trustee's Interim and Final Reports.

42.     MSHA, c/o Camden, received actual notice of Debtor's Motion For Full Compliance Discharge on or around January 28, 2013. <u>See</u> Bankruptcy Case No. 09-10077 at Document No. 32.

43.     The Court entered an Order Granting Debtor's Motion for Full Compliance Discharge and a Discharge of Debtor After Completion of Chapter 13 Plan on March 4, 2013. <u>See</u> Bankruptcy Case No. 09-10077 at Document No. 40.

44.     MSHA c/o Camden received actual notice of the Discharge of Debtor After Completion of Chapter 13 Plan on or around March 4, 2013. <u>See</u> Bankruptcy Case No. 09-10077 at Document No. 42.

45.     Mrs. Ryerson breathed a sigh of relief when she received her discharged and was grateful she would have a fresh financial start.

46.     Mrs. Ryerson continued to make her payment to Camden each month, on time after her discharge entered.

47.     Camden misapplied Mrs. Ryerson's bankruptcy payments during the course of her bankruptcy and thereafter as reflected in the attached loan transaction history, Exhibit 2.  Camden continued to apply Mrs. Ryerson's post-petition payments to pre-petition amounts due showing her behind on the loan during the course of the bankruptcy and after her discharge.   Camden further misapplied payments received by the trustee.

48.     Camden continued to misapply payments received by Mrs. Ryerson after her bankruptcy discharge, resulting in her inaccurately appearing to be months behind on the mortgage.  See loan transaction history, Exhibit 2.

49.     It was not until October 16, 2014 that Camden attempted to reconcile the account. Id.

50.     In a letter dated July 16, 2013 from Camden to Mrs. Ryerson, Camden alleged that Mrs. Ryerson's loan was in default and that options to consider were sale or short sale of the home.   A true and accurate copy of the letter is attached hereto as Exhibit 3.

51.     In a letter dated August 15, 2013 from Camden to Mrs. Ryerson, Camden alleged that Mrs. Ryerson's loan was "significantly delinquent."  Camden stated it had "delegated authority" to consider her consider her for loss mitigation options.  A true and accurate copy of the letter is attached hereto as Exhibit 4.

52.     In a letter dated August 16, 2013 from Camden to Mrs. Ryerson Camden again alleged her loan to be in default and asked for pay stubs, bank statements, income tax returns, and a description

of her financial situation to evaluate her for loss mitigation options.  A true and accurate copy of the letter is attached as Exhibit 5.

53.      Mrs. Ryerson received the letters one after the other and was shocked and devastated.  She had thought that she had paid all amounts due in the bankruptcy, had received her discharge for completing her plan, and was going to start anew.  The letters raised doubt and panic that perhaps she would lose her home.

54.      In January 2014, Mrs. Ryerson attempted to apply for a loan in part to refinance her mortgage away from Camden.

55.      Camden, however, reported to at least one credit reporting agency that Mrs. Ryerson was late on her mortgage payments throughout 2011, 2012, and 2013 whereby making it more difficult for Mrs. Ryerson to obtain a loan. See Exhibit 6, a redacted portion of Mrs. Ryerson's credit report.

56.      Upon information and belief, Camden engaged in such inaccurate credit reporting throughout Mrs. Ryerson's bankruptcy.

57.      Mrs. Ryerson communicated with Camden at least 15 times in an effort to resolve the issues, explaining about the bankruptcy plan and discharge.

58.      On February 4, 2014, counsel for Mrs. Ryerson at the time, Rich Goldman, delivered a letter to Camden regarding the inaccurate accounting of Mrs. Ryerson's loan and enclosed a copy of the Court's Order Granting Motion to Determine Mortgage Current.  See Exhibit 7.

59.      Shortly thereafter, Camden sent mortgage statements each month alleging a "Total Amount Due" starting at $4,994 and increasing each month up to $5,794.  A payment coupon with the total amount due was included with each statement.  True and accurate copies of Mortgage Statements dated 4/15/14, 5/18/14, 6/15/14, 7/16/14, 8/17/14, and 9/15/14 are attached hereto as Exhibit 8.

60.    On or around October 9, 2014 Attorney Goldman called and spoke with Kelley Boston from MSHA, alerting her of the Order Granting Motion to Determine Mortgage Current and about Camden's collection attempts.  Ms. Boston agreed to contact Camden to try and resolve the issues. See a true and accurate copy of the email exchange between attorney Goldman and Ms. Boston attached hereto as Exhibit 9.

61.    On October 14, 2014 MSHA acknowledge the Order Deeming Current and agreed that, in light of the Order Granting Motion to Determine Mortgage Current, Camden would "re-analyze the account, and will include only the expenses there were are due after the Order date of February 1, 2013." See email from Kelley Boston of MSHA to attorney Goldman dated October 14, 2014 attached hereto as Exhibit 10.

62.    On October 16, 2014, Camden's attorney, the same attorney who filed Mrs. Ryerson's bankruptcy in 2009, asked Attorney Goldman to delay filing a lawsuit against Camden while she tried to resolve the issues.

63.    Attorney Goldman incurred time and expense on Mrs. Ryerson's account in an attempt to resolve the loan issues.

64.    In a letter dated October 21, 2014 from Camden's attorney to Attorney Goldman, Camden admitted that Mrs. Ryerson had made consistent, timely payments during her chapter 13 bankruptcy and was current on her loan for November 1, 2014.  Camden stated the monthly payment would be $751.84.  See Exhibit 1.

65.    Mrs. Ryerson, through counsel, requested that she be allowed to pay her taxes and insurance directly in light of the issues she had encountered with Camden's accounting.  Camden declined the request.

66.     In a mortgage statement dated November 16, 2014, Camden attempted to collect a monthly payment of $794.10, not the $751.84 as previously represented.  The statement also showed that $811.21 of Mrs. Ryerson's payments had been inaccurately credited to "Fees."  A true and accurate copy of the statements is attached hereto as Exhibit 11.

67.     Mrs. Ryerson, through her then-counsel, emailed counsel for Camden on November 24, 2014 complaining about the incorrect monthly payment amount on the November statement and the $811.21 "fees."  Mrs. Ryerson's attorney also requested proof that Camden had begun to report the loan correctly to the credit reporting agencies in addition to compensation for Mrs. Ryerson and counsel, including attorneys' fees, for Camden's conduct.  Camden did not respond to these requests.

68.     The December 16, 2014 mortgage statement had the correct monthly amount due of $751.84 but again showed that $811.21 had been applied to "Fees."  A true and accurate copy of the statements is attached hereto as Exhibit 12.

69.     Mrs. Ryerson's counsel attempted to resolve the issue again to no avail.

70.     Mrs. Ryerson wanted again to explore refinancing to a new lender to get away from Camden and on April 3, 2015 she called Camden and requested a payoff statement on her mortgage.

71.     A payoff was provided on April 27, 2015.  A true and accurate copy of the payoff is attached hereto as Exhibit 13.

72.     The payoff shows that $82,138.29 was due to pay off the loan as of April 27, 2015.

73.     On April 27, 2015, Mrs. Ryerson and her husband entered into a loan with an interest rate of 6% versus the interest rate of 4.875% she had with Camden, in large part to get away from the accounting and application of payments problems she experienced with Camden.  See Settlement Statement; Exhibit 14.

10

74.    In a mortgage statement dated May 17, 2015, Camden shows that the loan was paid off and included $480.50 being applied year to date to "Fees."  A true and accurate copy of the statement is attached hereto as Exhibit 15.

75.    The loan was current from January to May 2015 and no "fees" should have been charged and applied from Mrs. Ryerson's payment.

76.    Camden's repeated communications and misconduct regarding the loan has caused Mrs. Ryerson severe distress, anxiety, desperation, humiliation, sleeplessness, headaches, embarrassment, pain and frustration especially after having filed for bankruptcy- a decision she did not make lightly, completing her chapter 13 plan, bringing the loan current and keeping current each month on payments, and then facing inaccurate accounting that showed her again in default and thereafter struggling to get accurate account information regarding amounts owed so that she could refinance away from Camden.

77.    Mrs. Ryerson suffered severe harm to her relationship with her husband who also could not understand why Camden kept asking for money and kept pressuring Mrs. Ryerson to fix the problem.  It became the primary source of conversation and tension between them.

78.    Mrs. Ryerson felt that she now knew why people kill themselves over situations like this.  The stress and pressure was overwhelming.

79.    Camden committed such violations knowingly, recklessly, and in bad faith as they had actual notice of Mrs. Ryerson's bankruptcy and multiple warning letters, calls, and emails from her counsel yet continued to send communications directly to Mrs. Ryerson in an attempt to collect on monies not owed.

80.    Such conduct was so outrageous and egregious as to imply malice.

81.     Upon information and belief, Camden has engaged in the same or similar conduct in other bankruptcy matters.  See e.g. Estes et al v. Camden National Bank et al, U.S. Bankruptcy Court, District of Maine, No. 14-02013.

82.     Camden has engaged in a pattern and practice of seeking to collect on debt that has been listed and paid in bankruptcy.

83.     On June 9, 2015, current counsel for Mrs. Ryerson, Andrea Bopp Stark of Molleur Law and Gary Goldberg of Terry Garmey and Associates delivered via mail and email a settlement letter to counsel for MSHA and Camden, Perkins Thompson, attention attorneys Randy Creswell and Lauren Weliver on behalf of Mrs. Ryerson regarding claims she may have against Camden and MSHA.

84.     Despite ongoing discussions, a settlement was not reached.

85.     MSHA filed a Motion to Reopen Mrs. Ryerson's bankruptcy matter on August 8, 2015 in the US Bankruptcy Court District of Maine.  See Bankruptcy Case No. 09-10077 at Document No. 46.

86.     The Motion seeks to reopen the bankruptcy in an effort to remove the over 2 1/2 year old Order Determining Mortgage Current pursuant to Federal Rule of Civ. P. 60(b)(4) based on allegations of improper service.

87.     Camden/MSHA and Mrs. Ryerson's counsel communicated repeatedly up until the filing of MSHA's Motion to Reopen.

88.     Counsel for Camden/MSHA knew that Mrs. Ryerson's bankruptcy counsel, Rich Goldman, had referred claims including violation of the Order Determining Current to Gary Goldberg and Molleur Law.

89.     MSHA did not provide service of the Motion to Reopen to Mrs. Ryerson's current counsel.

90.     Mrs. Ryerson filed an opposition to the Motion to Reopen on August 24, 2015.  See Bankruptcy Case No. 09-10077 at Document No. 48.

91.     MSHA filed a Motion to Vacate and Relief from Bankruptcy Court Order on September 2, 2015. See Bankruptcy Case No. 09-10077 at Document No. 49.

92.     MSHA's filing of the Motion to Reopen and Motion to Vacate are attempts to remove the over 2 1/2 year old Order Determining Mortgage Current in an effort to avoid liability for their repeated violations of the Order.


**COUNT ONE: Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. §524**

93.     The Plaintiff realleges and incorporates the paragraphs above as if fully set out herein.

94.     Camden violated the Bankruptcy Discharge Injunction, 11 USC §524, as enforced by §105, by intentionally attempting to collect on the loan debt that had been listed and paid in Mrs. Ryerson's bankruptcy after it had actual knowledge of the bankruptcy, the Order confirming the debtor's plan, the OADC, the Status Order, and the discharge and after receiving multiple warnings from Mr. Ryerson through her attorney.

95.     Camden and MSHA had notice of the Order Discharging Debtor after Completion of Chapter 13 Plan on or around March 6, 2013.  See Bankruptcy Case No. 09-10077 at Document No. 42.

96.     Camden's conduct, including but not limited to a) delivering notices alleging the loan was in default post completion of her plan and post discharge; b) delivering letters attempting to collect incorrect amounts past due;  c) delivering statements attempting to collect an inflated increasing balance due each month complete with payment coupons; d) applying Mrs. Ryerson's payments to "fees" when no fees were due as the loan remained current and then delivering

statements to Mrs. Ryerson evidencing this misapplication of fees; e) misapplication of payments to incorrect due date; f) reporting to the credit reporting agencies that Mrs. Ryerson was late on her payments for three years when she was paying them on time in the bankruptcy; g) and charging her for "fees" at the refinance of her mortgage that should not have been charged is unfair, coercive, harassing, willful, and knowing.

97.    MSHA and Camden continued to engage in this conduct even after many efforts by Mrs. Ryerson and her counsel to correct the issues as evidenced in party by attorney Goldman's letter dated February 4, 2014 (Exhibit 7) and emails dated October 14, 2014 (Exhibit 10).

98.    In particular, MSHA, through Camden, violated 11 U.S.C. §524(i) by failing to credit payments received under the confirmed bankruptcy plan in the manner required by the plan.  See loan transaction history, Exhibit 2.

99.    Mrs. Ryerson was current on her mortgage payments throughout the bankruptcy as admitted by MSHA is the October 21, 2014 letter from Camden to Mrs. Ryerson counsel, Exhibit 1.

100.    Yet, MSHA, through Camden, continued to allege amounts that were not due because of their misapplication of payments received during the plan as evidenced by the letters and billing statements sent to Mrs. Ryerson by Camden.  See Exhibits 3, 4, 5, 11, 12, 13 and 15, and See loan transaction history, Exhibit 2.

101.    MSHA and Camden's conduct caused material injury to Mrs. Ryerson in having to retain counsel, miss work, and travel all to try and resolve the issue before litigation and having to pay amounts not due and a higher interest rate at the refinancing of the mortgage.  Mrs. Ryerson also suffered emotional injury due to MSHA/Camden's conduct as outlined above.

102.    Mrs. Ryerson felt harassed and coerced to the point that she believed Camden would

14

never accurately maintain her loan account and refinanced with a different lender at a higher interest rate.

103.    Further, as detailed above, Camden has engaged in a pattern and practice of trying to collect from Maine debtors on debts listed and/or paid in bankruptcy.

104.    Such conduct is so outrageous and egregious as to imply malice.

105.    At all relevant times, Camden was acting as the agent of MSHA.

106.    All Defendants are jointly and severally liable for such violations.

107.    MSHA and Camden are in contempt of the bankruptcy discharge injunction issued in Mrs. Ryerson's bankruptcy case and Mrs. Ryerson is entitled to recover relief including but not limited to actual and punitive damages, costs and attorney's fees from MSHA and Camden in an amount to be determined by the Court pursuant to 11 U.S.C. §105.


### **COUNT TWO**: Violation of the Order Determining Mortgage Current

108.    The Plaintiff realleges and incorporates the paragraphs above as if fully set out herein.

109.    MSHA, through Camden, had actual notice of Mrs. Ryerson's Motion to Determine Status of Mortgage as Current.  See Bankruptcy Case No. 09-10077 at Document No. 29.

110.    The Court entered an Order Determining Mortgage Current on February 1, 2013.  See Bankruptcy Case No. 09-10077 at Document No. 36.

111.    MSHA participated in Mrs. Ryerson's bankruptcy.  See Bankruptcy Case No. 09-10077 at Claim 4-1.

112.    MSHA and Camden had access to the Bankruptcy Court docket and proceedings through the Court's ECF filing system and PACER.

113.    At the latest, Camden received a copy of the Order Determining Mortgage Current on or

15

around February 4, 2014 when it was mailed to Camden by Mrs. Ryerson's counsel. See Exhibit 7.

114.    MSHA acknowledged the Order Determining Mortgage Current on October 14, 2014, See Exhibit 10.

115.    Mrs. Ryerson was current throughout her bankruptcy as admitted by MSHA and Camden in their October 21, 2014 letter, Exhibit 1.

116.    Mrs. Ryerson remained current on her mortgage payments until April 2015 when she refinanced the loan.

117.    MSHA, through Camden, misapplied Mrs. Ryerson's payments resulting in her account appearing in default.  See loan transaction history, Exhibit 2.

118.    MSHA, through Camden, attempted to collect and collected on monies that were not due from July 2013 until Mrs. Ryerson refinanced her loan in April 2015.  See Exhibits 3, 4, and 5.

119.    MSHA, through Camden, inaccurately reported Mrs. Ryerson as late to credit reporting agencies.  See Credit Report, Exhibit 6.

120.    MSHA and Camden continued to engage in this conduct even after many efforts by Mrs. Ryerson and her counsel to correct the issues as evidenced in party by attorney Goldman's letter dated February 4, 2014 (Exhibit 7) and emails dated October 14, 2014 (Exhibit 10).

121.    MSHA and Camden's collection efforts violated the Order Determining Mortgage Current.

122.    At all relevant times, Camden was acting as the agent of MSHA.

123.    All Defendants are jointly and severally liable for such violations.

124.    MSHA and Camden are in contempt of the Order Determining Mortgage Current issued in Mrs. Ryerson's bankruptcy case and Mrs. Ryerson is entitled to recover relief including but

not limited to actual and punitive damages, costs and attorney's fees from MSHA and Camden in an amount to be determined by the Court pursuant to 11 U.S.C. §105.

## COUNT THREE: Violation of the Order Confirming Amended Chapter 13 Plan

125.    The Plaintiff realleges and incorporates the paragraphs above as if fully set out herein.

126.    MSHA, through Graystone, had actual notice of the Bankruptcy Court's Order Confirming Amended Chapter 13 Plan on or around April 18, 2009.  See Bankruptcy Case No. 09-10077 at Document No. 15.

127.    Mrs. Ryerson's Chapter 13 Plan allowed her to cure the arrears on the mortgage through payments to the Trustee and to continue making payments directly to MSHA and their servicer for current ongoing payments due.  See Bankruptcy Case No. 09-10077 at Document No. 12.

128.    Camden began servicing Mrs. Ryerson's loan in 2010 and was on notice of the bankruptcy at that time.

129.    Mrs. Ryerson was current throughout her bankruptcy as admitted by MSHA and Camden in their October 21, 2014 letter, Exhibit 1.

130.    MSHA, through Camden, violated the Courts Order Confirming Amended Chapter 13 Plan by failing to apply the payments received in the manner prescribed in the confirmed Plan and causing Mrs. Ryerson's loan to reflect as being in default.   See loan transaction history, Exhibit 2.

131.    MSHA participated in Mrs. Ryerson's bankruptcy.  See Bankruptcy Case No. 09-10077 at Claim 4-1.

132.    MSHA and Camden had access to the Bankruptcy Court docket and proceedings through the Court's ECF filing system and PACER.

133.    MSHA, through Camden, attempted to collect, and even collected on monies that were

not due.  See Exhibits 8, 11, 12, and 15.

134.   MSHA and Camden continued to engage in this conduct even after many efforts by Mrs. Ryerson and her counsel to correct the issues as evidenced in party by attorney Goldman's letter dated February 4, 2014 (Exhibit 7) and emails dated October 14, 2014 (Exhibit 10).

135.   MSHA and Camden's collection efforts violated the Order Confirming Amended Chapter 13 Plan.

136.   MSHA and Camden are in contempt of the Order Confirming Amended Chapter 13 Plan issued in Mrs. Ryerson's bankruptcy case and Mrs. Ryerson is entitled to recover relief including but not limited to actual and punitive damages, costs and attorney's fees from MSHA and Camden in an amount to be determined by the Court pursuant to 11 U.S.C. §105.

### COUNT FOUR: Violation of the Order Allowing and Disallowing Claims

137.   The Plaintiff realleges and incorporates the paragraphs above as if fully set out herein.

138.   MSHA, through Graystone, had actual notice of the Bankruptcy Court's Order Allowing and Disallowing Claims and Modifying Plan on or around November 25, 2009.  See Bankruptcy Case No. 09-10077 at Document No. 20.

139.   Mrs. Ryerson's Chapter 13 Plan allowed her to cure the arrears on the mortgage through payments to the Trustee and to continue making payments directly to MSHA and their servicer for current ongoing payments due.  See Bankruptcy Case No. 09-10077 at Document No. 12.

140.   Camden began servicing Mrs. Ryerson's loan in 2010 and was on notice of the bankruptcy at that time.

141.   Mrs. Ryerson was current throughout her bankruptcy as admitted by MSHA and Camden in their October 21, 2014 letter, Exhibit 1.

142.    MSHA, through Camden, violated the Courts Order Allowing and Disallowing Claims and Modifying Plan by failing to apply the payments received in the manner prescribed in the confirmed Plan and causing Mrs. Ryerson's loan to reflect as being in default.   See loan transaction history, Exhibit 2.

143.    MSHA participated in Mrs. Ryerson's bankruptcy.  See Bankruptcy Case No. 09-10077 at Claim 4-1.

144.    MSHA and Camden had access to the Bankruptcy Court docket and proceedings through the Court's ECF filing system and PACER.

145.    MSHA, through Camden, attempted to collect and collected on monies that were not due from July 2013 until Mrs. Ryerson refinanced her loan in April 2015.  See Exhibits 3,4, 5, 11 and 12.

146.    MSHA and Camden continued to engage in this conduct even after many efforts by Mrs. Ryerson and her counsel to correct the issues as evidenced in party by attorney Goldman's letter dated February 4, 2014 (Exhibit 7) and emails dated October 14, 2014 (Exhibit 10).

147.    MSHA and Camden's collection efforts violated the Court's Order Allowing and Disallowing Claims and Modifying Plan.

148.    MSHA and Camden are in contempt of the Order Allowing and Disallowing Claims and Modifying Plan issued in Mrs. Ryerson's bankruptcy case and Mrs. Ryerson is entitled to recover relief including but not limited to actual and punitive damages, costs and attorney's fees from MSHA and Camden in an amount to be determined by the Court pursuant to 11 U.S.C. §105.

**COUNT  FIVE: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 Et Seq. And Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 Et Seq.**

149.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

150.    Within one year prior to the filing of this suit, and ongoing for more than one year prior, by example only and without limitation, Camden violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. and the Maine Fair Debt Collection Practices Act 32 M.R.S.A. §11001 et seq. (collectively the "FDCPA") by:

a.      Falsely representing the character, amount, and legal status of the loan debt through letters dated at least 7/16/2013, 8/15/2013, 8/16/2013, 4/15/2014, 5/18/2014, 6/15/2014, 7/16/2014, 8/17/2014, 9/15/2014, 11/16/2014, 12/16/2014, 4/23/2015, 5/17/2015 as outlined above, phone calls with Mrs. Ryerson, and the credit report (15 U.S.C. §1692e(2); 32 M.R.S.A. §11013(2)(B)). See Exhibits 3, 4, 5 8, 11, 12 and 15 and Credit Report Exhibit 6 ;

a.      The use of false representations and deceptive means to collect on the loan debt (15 U.S.C. §1692e(10); 32 M.R.S.A. §11013(2)). Id.

b.      Engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mr. Ackley in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed due to bankruptcy discharge. (15 USC §1692d ; 32 M.R.S.A. §11013(1)). Id.

c.      Communicating with Mrs. Ryerson in connection with the collection of the mortgage debt when Camden knew that the consumer was represented by an attorney with respect to that debt and had knowledge of that attorney's name and address. (15 USC §1692c(2); 32 M.R.S.A. §11012(1)(B)). Id.

d.      Using unfair or unconscionable means to collect or attempt to collect on the mortgage debt. (15 USC §1692f; 32 M.R.S.A. §11013(3)). Id.

151.    At all relevant times, Camden was acting as the agent of MSHA.  All Defendants are jointly and severally liable for such violations.

152.    As a result of the conduct, actions and inactions of Camden, Mrs. Ryerson suffered actual damages including, without limitation, retaining an attorney, missing work, and traveling to stop the misconduct, harassment, coercion, fear and anxiety and other financial, emotional and mental distress as detailed above.

153.    Mrs. Ryerson is entitled to recover actual damages including emotional distress damages, statutory damages, costs and attorney's fees from Camden and further relief as may be just and proper.

**COUNT SIX : Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §§9-403(F)-(G)**

154.    Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

155.    In an effort to collect on Mrs. Ryerson's mortgage debt, MSHA, through Camden disclosed information concerning the mortgage loan to national credit reporting agencies knowing that the debt was part of a bankruptcy and current per the bankruptcy plan.

156.    MSHA, through Camden disclosed late payments dates that were inaccurate.  See Credit Report, Exhibit

157.    MSHA, through Camden knew the debt was in dispute yet it did not disclose that fact and then failed to take any action to correct the inaccurate information after receiving notice of the improper disclosure.

158.    Further, MSHA and Camden's attempt collect on amounts they alleged due were in violation of final orders of the Bankruptcy court as outlined above in Counts One, Two, Three and Four.

21

159.    MSHA and Camden thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §§9-403(F) and (G).

160.    Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant to 9-A M.R.S. §9-408.

161.    At all relevant times, Camden was acting as the agent of MSHA.

162.    All Defendants are jointly and severally liable for such violations.

163.    The Plaintiff demands judgment for relief including but not limited to actual, including emotional,  damages, statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post- judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

### <u>COUNT SEVEN</u> : Failure to Timely Respond to Request for Payoff 9-A M.R.S. §§9-305(B)

164.    Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

165.    Pursuant to 9-A M.R.S. §9-305-B:

A creditor, assignee or servicer shall respond to a request for a payoff figure within 3 business days following receipt of such a request from a consumer or an agent of the consumer for a consumer credit transaction secured by a mortgage on real estate.

166.    Mrs. Ryerson requested a payoff from Camden on April 3, 2015.

167.    Camden did not provide a payoff figure until April 27, 2015, after Mrs. Ryerson's counsel got involved again.

168.    Interest continued to accrue on the loan during that time and in turn, after refinancing the loan, she is now paying interest on that interest.

169.    Camden failed to provide a timely payoff request as mandated per Maine State law and as such, Mrs. Ryerson is entitled to actual and statutory damages as well as attorneys' fees and costs under 9-A M.R.S. §405.

170.    Camden was acting on behalf of and as the agent of MSHA and therefore they are both

joint and severally liable for this violation.

## DEMAND FOR JURY TRIAL

The Plaintiff Susan Ryerson requests a trial by jury on all counts.


Dated at Biddeford, Maine, this 8th day of September, 2015.

MOLLEUR LAW OFFICE

By:  /s/ Andrea Bopp Stark                             
        Andrea Bopp Stark, Esq.
        Chet Randall, Esq.
        Counsel for Plaintiff, Susan Ryerson
        419 Alfred Street
        Biddeford, Maine  04005-3747
        (207) 283-3777
        (207) 284-4558 Fax
        andrea@molleurlaw.com
        chet@molleurlaw.com

        TERRY GARMEY AND ASSOCIATES

        Gary Goldberg, Esquire, Bar No. 320
        482 Congress Street, Suite 402
        Portland, ME  04101-3424
        207-899-4644